No. 19,825.

Wᴵᴸᴸᴵᴬᴹ P. Dᴏɴɴᴇʟʟ ᴀɴᴅ Pᴀᴜʟ J. Dᴜɴᴄᴀɴ, ᴅ/ʙ/ᴀ
Dᴜɴᴄᴀɴ Cʜᴇᴠʀᴏʟᴇᴛ Cᴏ. *v.* Iɴᴅᴜsᴛʀɪᴀʟ Cᴏᴍᴍɪssɪᴏɴ
ᴏғ Cᴏʟᴏʀᴀᴅᴏ ᴀɴᴅ Rᴜᴛʜ L. Mɪᴛᴄʜᴇʟʟ.
(368 P. [2d] 777)

Decided February 13, 1962.

Mr. Gᴇᴏʀɢᴇ B. Rɪᴄᴇ, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. James D. McKevitt, Assistant, for defendant in error Industrial Commission of Colorado.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

The present controversy requires an interpretation of certain provisions of the Colorado Employment Security Act, more particularly C.R.S. '53, 82-4-9 (1) (c) and (d), (1960 Perm. Cum. Supp.) and, if it be determined that such have been correctly construed by the Industrial Commission of Colorado, which body is exofficio Unemployment Compensation Commission of Colorado, then we must further pass on their constitutionality.

The controversy itself emerges from the following sequence of events. On September 30, 1959, Ruth Mitchell informed William P. Donnell and Paul J. Duncan, doing business as Duncan Chevrolet Co., and hereinafter referred to as either the employer or the company, that she desired to terminate her employment as a bookkeeper with the company. However, she remained on the job with her employer until a replacement could be secured, and she actually quit this employment on November 10, 1959.

Thereafter Ruth Mitchell submitted a claim for unemployment benefits with the Colorado Department of Employment Security. Upon hearing, a deputy acting for that department entered an order that, though she was entitled to some benefits, she should be disqualified from benefits for a period of fifteen weeks because of the circumstances surrounding the termination of her employment. Being dissatisfied with this decision Mitchell appealed to the Referee. After a hearing before the

Referee, at which time the Referee took testimony from the interested parties concerning the facts and circumstances surrounding this termination of employment, the Referee found that Mitchell "did . . . voluntarily leave her employment without good cause and without extenuating circumstances" and disqualified her from benefits for a period of twenty-two weeks. Both Mitchell and her employer appealed this ruling to the Commission, which body affirmed the ruling of the Referee and subsequently denied the employer's petition for rehearing. Thereafter, the employer instituted the present action in the district court seeking to have the award of the Commission vacated and set aside. This the trial court declined to do, and entered its order and judgment affirming the award of the Commission, which award granted unemployment benefits to Mitchell but disqualified her from receiving such benefits for a period of twenty-two weeks.

It is the employer's initial contention that having found that Mitchell voluntarily quit her employment without good cause and without any extenuating circumstances, the Commission was obligated to disqualify her for the maximum length of time permitted by the applicable statute, namely thirty-two and one-half weeks, but the more basic and fundamental objection voiced by the employer is his contention that if under the circumstances surrounding her termination of employment the applicable statute permits *any* unemployment benefits to Mitchell, then such statute takes the employer's property without due process of law and is unconstitutional.

More specifically, the employer assigns error on three grounds: (1) the Commission in making an award of benefits "acted without or in excess of its powers; (2) that if the applicable statute permits and authorizes the award as made by the Commission, then said statute is "repugnant to and violates the provisions of Section 1 of the Fourteenth Amendment of the Constitution of

the United States and of Article II, section 25 of the Constitution of the State of Colorado, by depriving plaintiff of its property without due process of law in awarding tax revenue to private persons for private purposes"; and (3) that C.R.S. '53, 82-4-9 (1) (c) and (d) (1960 Perm. Cum. Supp.) which purports to give to the Commission the power to disqualify "for not less than ten weeks nor more than thirty-two and one-half weeks" is repugnant to and violates Article V, Section 1 of the Constitution of Colorado and the Fourteenth Amendment to the Constitution of the United States "in that the provisions of said statute constitute an unlawful delegation of legislative power and fail to set forth adequate standards."

Mitchell though served with summons has made no appearance in either the trial court or this Court. However, the Commission has appeared and contends that it correctly construed and applied the statute here under attack, and that the statute is not subject to the constitutional infirmities urged by the employer.

The statute with which we are here concerned was enacted by the General Assembly in 1959, and, as noted above, is now referred to as C.R.S. '53, 82-4-9 (1) (c) and (d) (1960 Perm. Cum. Supp.). The particular portion of this statute with which we are here concerned provides, in part, that:

" . . . if an individual has been determined guilty of gross misconduct . . . or has quit his job without good cause and without extenuating circumstances, he shall be disqualified for not less than ten weeks nor more than thirty-two and one-half weeks . . . as determined by the department in each case according to the circumstances or seriousness of the act or offense ... In the imposition of disqualifications it is the intent of the legislature that the department shall at all times be guided by the tenet that unemployment insurance is for the benefit of persons unemployed through no fault of his own; and that each eligible individual who is unem-

ployed through no fault of his own shall be entitled to receive benefits; and that every person has the right to leave any job for any reason but that the circumstances of the separation shall be considered in determining the amount of benefits he may draw . . . "

In our view the foregoing statute in clear and understandable language empowers the Colorado Department of Employment Security, subject to review by the Commission itself, to disqualify for unemployment benefits one who has voluntarily left his employment without good cause and without any extenuating circumstances for a period of time not less than ten weeks, nor more than thirty-two and one-half weeks, with the amount of benefits to be drawn dependent upon the circumstances of each particular separation. Careful review of the record convinces us that the Commission in affirming the award of its Referee that Mitchell be disqualified for twenty-two weeks did not act in excess of its power or in an arbitrary or capricious manner. There was evidence before the Commission that Mitchell quit because of a salary dispute with her employer. Notwithstanding the finding that such does not constitute "good cause" nor is it an "extenuating circumstance," still such is a "circumstance of the separation" which supports the determination that she be disqualified for benefits for period of twenty-two weeks, which was within the limits prescribed by the legislature.

The real bone of contention is not that the Commission failed to impose the maximum disqualification permitted by the statute, namely thirty-two and one-half weeks, but rather stems from the deep-seated conviction of the employer that under the circumstances of her separation Mitchell is not entitled to *any* unemployment benefits whatsoever.

The constitutional defects urged by the employer are: (1) to grant *any* unemployment benefits to an employee who voluntarily quits his employment "without good

cause and without any extenuating circumstances" deprives the employer of his property without due process of law; and (2) the statute constitutes an unlawful delegation of legislative power to an administrative body.

Similar contentions were considered and rejected by this Court in *The Cottrell Clothing Company v. Teets,* et al. 139 Colo. 558, 342 P. (2d) 1016. The employer attempts to escape the effect of the opinion in the *Cottrell* case by pointing out that the statute being tested in the instant case was enacted subsequent to the decision in the *Cottrell* case, and, he argues, was the legislature's "answer" to that decision. Though admittedly we are considering a statute enacted subsequent to the *Cottrell* decision, that fact in nowise minimizes the effect of that decision. As a matter of fact the statute construed and upheld in the *Cottrell* case was strikingly similar and in fact substantially parallel to the statute here under attack. The statute under consideration in the *Cottrell* case was enacted by the General Assembly in 1957 and provided, in part, as follows:

"An individual shall be disqualified for benefits if the department finds that such individual has . . . left work voluntarily without good cause, or been discharged for misconduct connected with his work. . . . Such disqualification shall not be less than one week nor more than ten consecutive weeks . . . according to the circumstances or seriousness of the act or offense."

Also, there was then, as now, a statement in the statute that the intent of the legislature was to provide unemployment benefits for those who are "unemployed through no fault of their own." See C.R.S. '53, 82-1-2. In the *Cottrell* case the so-called "equities" of the factual situation were even more favorable to the employer than in the instant case. There the employee was discharged for misconduct which consisted of insubordination. Here Mitchell quit because of a salary dispute

which according to findings of the Commission did not, however, constitute good cause or extenuating circumstances. There, as here, the employer urged that any award of unemployment benefits deprived him of his property without due process of law and that there was an unlawful delegation of legisiative power in that the Commission was purportedly authorized to fix the disqualification period from one to ten weeks, according to the circumstances of each case. As was mentioned above, these arguments were considered and rejected in toto in the *Cottrell* case, and to uphold these self-same contentions in the instant case would only amount to a complete repudiation of both the result and rationale of that decision. In our view the *Cottrell* case is the complete answer to the employer's contention that C.R.S. '53, 82-4-9 (1) (c) and (d) (1960 Perm. Cum. Supp.) is unconstitutional and that decision should and must control the present controversy. This was the basis for the judgment of the trial court affirming the award of the Commission. In so holding it was correct.

The judgment is affirmed.